**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| LIFE SETTLEMENTS ABSOLUTE RETURN I, LLC, *et al.*, | Case No. 17-13030 (    ) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN INTERIM ORDER**
**AUTHORIZING DEBTORS TO (A) CONTINUE EXISTING CASH**
**MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING**
**BANK ACCOUNTS AND BUSINESS FORMS**

Life Settlements Absolute Return I, LLC and Senior LS Holdings, LLC

(collectively, the "**Debtors**"), as debtors and debtors in possession and pursuant to

sections 105(a), 345, 363(b), and 363(c) of title 11 of the United States Code, §§ 101–

1532, as amended (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal

Rules of Bankruptcy Practice and Procedure (the "**Bankruptcy Rules**"), hereby move

(the "**Motion**") for the entry of an interim order authorizing, but not directing, the

Debtors to (a) continue the existing cash management system and (b) maintain prepetition

bank accounts. In support of the Motion, the Debtors rely upon the *Declaration of*

*Robert J. Davey, III in Support of Chapter 11 Petitions and First Day Motions* (the "**First**

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Life Settlements Absolute Return I, LLC (7992) and Senior LS Holdings, LLC (5731). The mailing address for the Debtors, solely for purposes of notices and communications, is: 2131 Woodruff Road, Suite 2100-117, Greenville, South Carolina 29607, with copies to Nelson Mullins Riley & Scarborough, LLP, c/o Shane G. Ramsey, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 and Bayard, P.A., c/o Evan T. Miller, 600 N. King Street, Suite 400, Wilmington, DE 19801.

**Day Declaration**")[2] filed with the Court concurrently herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

4.      The statutory predicates for the relief requested herein are sections 105(a), 345, 363(b), and 363(c) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## BACKGROUND

5.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "**Chapter 11 Cases**").

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the First Day Declaration.

6.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.  To date, no official committees have been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

7.      The history of the Debtors and the events giving rise to these Chapter 11 Cases are fully set forth in the First Day Declaration, which is hereby incorporated by reference.

8.      Debtors currently own four bank accounts with Wells Fargo, N.A. ("**Wells Fargo**") and one account with Wilmington Savings Fund Society, FSB ("**WSFS**" and together with Wells Fargo, the "**Banks**") as Custodian for Senior LS Holdings, LLC (collectively the "**Bank Accounts**").  Information for these Bank Accounts is listed in the following chart:

| Bank | Account Name | Type of Account | Account No. (Last Four Digits) | Account Balance |
| --- | --- | --- | --- | --- |
| Wells Fargo | LSAR Collection Account | Trust | 0500 | $7,918,322 |
| Wells Fargo | LSAR Payment Account | Trust | 0501 | $0.00 |
| Wells Fargo | LSAR Premium Reserve Account | Trust | 0502 | $353,214 |
| Wells Fargo | LSAR Litigation Account | Trust | 0504 | $20 |
| WSFS | Senior LS Christiana Trust Account | Trust | 1044 | $9,667 |

9.      The operation of the LSAR Collection Account, LSAR Payment Account, LSAR Premium Reserve Account, and LSAR Litigation Account (collectively, the "**Wells Fargo Bank Accounts**") is mandated and delineated in the trust indenture entered into between Debtor Life Settlements Absolute Return I, LLC ("**LSAR**") and Wells

Fargo on June 12, 2008 (the "**Indenture**"). All funds held in the Wells Fargo Bank Accounts are held by Wells Fargo, as trustee under the Indenture, and distributed by Wells Fargo in accordance with the Indenture and Policy Administration Agreement. Notably, the Debtors do not have signature authority on the Wells Fargo Bank Accounts. LSAR merely provides payment instructions to Wells Fargo, who makes all disbursements and transfers between the Wells Fargo Bank Accounts in accordance with the Indenture and Policy Administration Agreement.

10. Specifically, the Indenture requires LSAR to maintain the following Wells Fargo Bank Accounts to be used as follows:

     a.    Collection Account (Account 0500): The Collection Account is LSAR's central account whereby all collections from the sale of the Policies, death benefits received from the Policies, and investment income is deposited. Thereafter, funds from the Collection Account are transferred to the Premium Reserve Account (discussed below), and if additional funds are present, transferred to the Payment Account (discussed below).

     b.    Payment Account (Account 0501): Payments realized from the sale of the Policies, death benefits received from the Policies, and investment income are made to LSAR's creditors from funds available in the Payment Account.

     c.    Premium Reserve Account (Account 0502): Annual premiums for LSAR's Policies are paid from the Premium Reserve Account. LSAR is required to maintain two years in premium reserves to service premium payments for its Policies.

     d.    Litigation Account (Account 0504): The Litigation Account was initially established to make settlement payments related to litigation involving three insurance policies initially purchased by LSAR. However, the Litigation Account is no longer used by LSAR and can be terminated and closed. The Debtors would request that the Court permit the Debtors authority to close this Litigation Account and direct Wells Fargo to transfer the nominal funds therein to the Collection Account.

11.     Further, Senior LS maintains one (1) bank account which serves as a Policy sale escrow account as follows:

      a.    <u>Christiana Trust Account (1044)</u>: When Policies are sold, escrowed purchase funds from the buyers are released to this account.  Fees and expenses related to the sale are paid from this account with the net proceeds remitted to LSAR's Collection Account, and then disbursed by Wells Fargo pursuant to the Indenture and Policy Administration Agreement.

12.     These Bank Accounts are collectively referred to as the Debtors' "**Cash Management System**."  All of the Bank Accounts are maintained with a depository authorized by the Office of the United States Trustee for Region 3.

13.     This Cash Management System permits the Debtors to accurately monitor cash availability at all times and to track and manage the collection and transfer of funds from a central position.

## RELIEF REQUESTED

14.     By this Motion, pursuant to Bankruptcy Code sections 105(a), 345, 363(b), and 363(c), the Debtors request that the Court enter an interim order authorizing the Debtors to (a) continue the existing cash management system and (b) maintain current bank accounts and business forms.

## BASIS FOR RELIEF

### A. Continuation of the Cash Management System is in the Best Interest of the Debtors and All Other Parties in Interest

15.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to

engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same).  Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system.  *See, e.g., In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *In re Vision Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").  Accordingly, the Debtors seek authority pursuant to section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to its Cash Management System described above.

16.    Additionally, the Court may exercise its equitable powers to grant the relief requested herein. Specifically, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) and the doctrine of necessity, the Court may exercise its broad grant of equitable powers to approve this Motion, including the payment of prepetition obligations, when such

payment is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11").  Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

17.     The Cash Management System constitutes an ordinary course and essential business practice, and is required by the Indenture.  Accordingly, the continued use of the Cash Management System without interruption is vital to the Debtors' business operations and the success of this chapter 11 case.

18.     The operation of the Debtors' businesses requires that the Cash Management System continue during the pendency of these Chapter 11 Cases.  Requiring the Debtors to adopt a new cash management systems at this early and critical stage of this case, or to extract the Debtors from the Cash Management System, would be expensive, create unnecessary administrative burdens, would be extraordinarily disruptive to the operation of the Debtors' business, and would be in violation of the terms of the Indenture.   Any disruption to the Cash Management System would create unnecessary costs and administrative burdens and be disruptive to the Debtors' operations.

19.     In furtherance of the foregoing, the Debtors request that the Banks be authorized to continue to administer such accounts as they were maintained prepetition, without interruption, in the ordinary course of business.

20.     Further, the continued postpetition use of a debtor's cash management system has been routinely approved in other bankruptcy cases in this District.  *See, e.g.*, *In re VRG Liquidating, LLC, et al.*, No. 16-10971 (LSS) (Bankr. D. Del. April 19, 2016) [D.I. 54]; *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 3, 2016) [D.I. 128]; *In re the Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015) [D.I. 103].

21.     For the foregoing reasons, continuation of the Cash Management System is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases and should be authorized pursuant to sections 363(c)(1) and 105(a) of the Bankruptcy Code.

## B. Maintenance of the Debtors' Existing Bank Accounts and Business Forms is Warranted

22.     The operating guidelines of the United States Trustee (the "**UST Operating Guidelines**") generally require that a chapter 11 debtor, among other things: (i) establish one debtor-in-possession account ("**DIP Account**") for all estate monies required for the payment of taxes (including payroll taxes); (ii) close all existing bank accounts and open new debtor-in-possession accounts; (iii) maintain a separate debtor-in-possession account for cash collateral; (iv) obtain checks that bear the designation "Debtor-in-Possession"; and (v) reference the debtor's bankruptcy case number and type of account on each such check.  Moreover, Local Rule 2015-2(a) generally requires that,

upon exhausting its existing check stock, a chapter 11 debtor order new checks labeled "Debtor-in-Possession" with the corresponding chapter 11 case number. These requirements are designed to establish a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against a debtor's inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the commencement of the debtor's Chapter 11 Cases.

23.     In these Chapter 11 Cases, strict enforcement of the UST Operating Guidelines and Local Rule 2015-2(a) would severely disrupt the Debtors' ordinary financial operations by reducing efficiencies, increasing administrative burdens, and creating unnecessary expenses.

24.     As previously stated, the operation of the Wells Fargo Bank Accounts is mandated and delineated in the Indenture. If the Debtors were required to close these Bank Accounts and open new debtor in possession accounts, the Debtors would be forced to reconstruct their cash management system in its entirety. Moreover, consolidation of the Debtors' accounts into a single DIP Account would violate the terms of the Indenture. This reconstruction would be impractical and cost prohibitive in an enterprise like the Debtors'.

25.     Moreover, the opening of new bank accounts would increase operating costs, and the delays that would result from opening new accounts, revising cash management procedures, and redirecting payments would negatively impact the Debtor's ability to operate its business while establishing these new arrangements. This would further exacerbate the risk to the Debtors' business caused by the Chapter 11 Cases.

26.     The Debtors believe that their transition into chapter 11 will be significantly smoother and more orderly, with minimum disruption and harm to Debtors' operations, if the Bank Accounts are continued following the Petition Date with the same account numbers.  By preserving business continuity and avoiding the disruption and delay to the Debtors' collection and disbursement procedures that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest will be best served. The confusion that would otherwise result, absent the relief requested herein, would ill-serve the Debtors' rehabilitative efforts.  Accordingly, the Debtors respectfully request authority to maintain the Bank Accounts in the ordinary course of business.

27.     In addition, payment of certain bank fees (the "**Bank Fees**"), including those incurred prepetition, is warranted.  Pursuant to the Indenture, Wells Fargo is entitled to collect fees in the amount of $5,000 per month associated with its duties as trustee under the Indenture.  Wells Fargo automatically debits the Bank Accounts for these Bank Fees.  As payment of these Bank Fees are required under the Indenture and will prevent any disruption to the Debtors' Cash Management System, payment of the Bank Fees is in the best interests of the Debtors and their estates.

28.     In the ordinary course of business, the Debtors conduct transactions by debit, wire, ACH, and other similar methods.  Accordingly, to avoid any disruption or claims against the Debtors, the Debtors are seeking to continue their prepetition debit, wire, and ACH practices during these chapter 11 cases.

29.     To minimize expenses to their estates, the Debtors request that they should also be permitted to maintain and continue to use their business forms, including electronic forms and paper forms, preprinted labels, letterhead and related documents (collectively, the "**Business Forms**") substantially in the forms existing immediately before the Petition Date.  Strict compliance with the UST Operating Guidelines, which require reprinting such documents, would increase the Debtors' expenses.  Accordingly, the Debtors believe it is appropriate to continue to use all Business Forms as such forms were in existence prior to the commencement of the Chapter 11 Cases, without any reference to the Debtors' current status as debtor in possession.

30.     No party in interest would be prejudiced in any way by the Debtors continued use of its existing Business Forms.  Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity surrounding the Debtors' bankruptcy filing and the notice of commencement of these Chapter 11 Cases that has been or will soon be provided to parties in interest.

31.     Courts in this district have consistently allowed debtors to use their prepetition checks and other forms without the "debtors in possession" label.  *See, e.g.*, *In re Violin Memory, Inc.*, No. 16-12782 (LSS) (Bankr. D. Del. Dec. 15, 2016) [D.I. 24]; *In re Chromcraft Revington, Inc.*, No. 15-10482 (KG) (Bankr. D. Del. March 9, 2015) [D.I. 33] (authorizing debtors to use their present forms, including preprinted checks, without reference to their status as debtors in possession, <u>provided</u>, <u>however</u>, that debtors would

start imprinting the legend "DIP" thereon following depletion of the debtors' preprinted forms).

32.     In short, any benefits of the Debtors' strict compliance with the UST Operating Guidelines or Local Rule 2015-2(a) would be far outweighed by the resulting expense, inefficiency, and disruption to the Debtors' business.  Accordingly, the Debtors request authority to maintain their Bank Accounts and Business Forms during these Chapter 11 Cases.  Furthermore, the Debtors seek a waiver of the UST Operating Guidelines to the extent that requirements outlined therein otherwise conflict with (i) the Debtors' existing practices under its Cash Management System, or (ii) any action taken by the Debtors in accordance with the interim or final order sought by this Motion, or any other order entered in these cases.

33.     By this Motion, the Debtors further seek the authority to implement ordinary course changes to its Cash Management System in the event that the Debtors conclude that changes in the Cash Management System are beneficial to their businesses. The Debtors seek authority to make such changes without further order of the Court so long as such changes are consistent with the Bankruptcy Code, and so long as approved by the Office of the United States Trustee.  This includes, but is not limited to, acceptance and processing of Bank Fees and charges associated with the Debtors' maintenance of its Cash Management System, provided that such fees and charges were specifically set forth in the terms of conditions of an agreement executed by both the Debtors and the respective banking institution.

## RESERVATION OF RIGHTS

34.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

35.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  Fed. R. Bankr. P. 6003.  As described herein and in the First Day Declaration, the Debtors' business operations rely heavily on the Cash Management System.  Any disruption in the continuation of these practices would disrupt the Debtors' operations and violate the terms of the Indenture. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

## WAIVER OF ANY APPLICABLE STAY

36.     The Debtors requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein

pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## <u>NOTICE</u>

37.     The Debtors will provide notice of this Application to: (a) the Office of the United States Trustee for Region 3, serving the District of Delaware; (b) the parties included on the Debtors' list of largest unsecured creditors; (c) the parties included in the Debtors' proposed creditor matrix filed with their petitions; (d) the Banks; and (e) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-l(m).  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

*[remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order granting this Motion and (i) authorizing the Debtors to continue their existing cash management system, (ii) authorizing the Debtors to maintain prepetition bank accounts, and (iii) granting such other relief as this Court deems just and proper.

Dated:  December 29, 2017
       Wilmington, Delaware

BAYARD, P.A.

*/s/ Evan T. Miller*
Evan T. Miller (No. 5364)
Greg J. Flasser (No. 6154)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:  emiller@bayardlaw.com
       gflasser@bayardlaw.com

- and -

B. Keith Poston *(pro hac vice pending)*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
1320 Main Street
Columbia, SC 29201
Phone: (803) 255-9518
Facsimile: (803) 255-9038
E-Mail: keith.poston@nelsonmullins.com

Shane G. Ramsey *(pro hac vice pending)*
John T. Baxter *(pro hac vice pending)*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
150 Fourth Avenue, North, Suite 1100
Nashville, TN  37219
Phone:  (615) 664-5355
Facsimile: (615) 664-5399
E-Mail:  shane.ramsey@nelsonmullins.com
       john.baxter@nelsonmullins.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*