## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| LIFE SETTLEMENTS ABSOLUTE RETURN I, LLC, *et al.*,[1] | Case No. 17-13030 (MFW) (Jointly Administered) |
| Debtors. | <u>Hearing Date:</u> 2/19/2019 @ 2:00 PM (ET) <u>Obj. Deadline:</u> 1/28/2019 @ 4:00 PM (ET) |

### DEBTORS' FOURTH MOTION FOR AN ORDER EXTENDING EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (the "**Debtors**") hereby move this Court (the "**Motion**"), pursuant to section 1121(d) of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), Rule 9006 the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form annexed hereto as **Exhibit A**, extending, for a fourth time, the Debtors' exclusive periods to file a chapter 11 plan or plans (the "**Exclusive Filing Period**") and to solicit acceptances of such plan(s) (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") for approximately 90 additional days through and including April 29, 2019, and June 25, 2019, respectively. In support

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Life Settlements Absolute Return I, LLC (7992) and Senior LS Holdings, LLC (5731). The mailing address for the Debtors, solely for purposes of notices and communications, is: 6650 Rivers Avenue Suite 105 #81921, North Charleston, SC 29406-4829, with copies to Nelson Mullins Riley & Scarborough, LLP, c/o Shane G. Ramsey, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 and Bayard, P.A., c/o Evan T. Miller, 600 N. King Street, Suite 400, Wilmington, DE 19801.

of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**JURISDICTION**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 105(a) and 1121(d) of the Bankruptcy Code, together with Bankruptcy Rule 9006(b)(1) and Local Rule 9006-2. Pursuant to Rule Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

2.      On December 29, 2017 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "**Chapter 11 Cases**"). On the same day, the Debtors filed a motion directing joint administration of the Chapter 11 Cases. On January 5, 2018, the Court entered an order directing the joint administration of the Chapter 11 Cases [D.I. 25].

3.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession. To date, no official committees have been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.      The Debtors' exclusive periods to file and solicit a plan pursuant to Bankruptcy Code section 1121 were originally set to expire on April 30, 2018 and June 29, 2018, respectively.

On April 9, 2018, the Debtors filed their first *Motion for an Order Extending Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code* [D.I. 97], which motion was granted by this Court by order dated April 27, 2018 [D.I. 109]. Accordingly, the Debtors' exclusive periods to file and solicit a plan were extended to July 30, 2018 and September 28, 2018, respectively (the "**First Extension**").

5.      On July 12, 2018, the Debtors filed their *Second Motion for an Order Extending Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code* [D.I. 151], which motion was granted by order dated July 30, 2018 [D.I. 161]. Accordingly, the Debtors' exclusive periods to file and solicit a plan were extended to October 29, 2018 and December 27, 2018, respectively (the "**Second Extension**").

6.      On October 26, 2018, the Debtors filed the *Third Motion for an Order Extending Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code* [D.I. 213], which motion was granted by order dated November 14, 2018 [D.I. 224]. Accordingly, the Debtors' exclusive periods to file and solicit a plan were extended to January 28, 2019 and March 27, 2019, respectively (the "**Third Extension**").

## RELIEF REQUESTED

7.      By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that: (a) the Exclusive Filing Period be extended through and including April 29, 2019; and (b) the Exclusive Solicitation Period be extended through and including June 25, 2019.[2] This is the Debtors' fourth request for an extension of the Exclusive Periods. The Debtors

---

[2] Pursuant to Local Rule 9006-2, the Debtors' Exclusive Periods "shall automatically be extended until the Court acts on the Motion, without the necessity for the entry of a bridge order." Del. Bankr. L.R. 9006-2.

also request that such extensions be without prejudice to their rights to request further extensions or to seek other appropriate relief.

**BASIS FOR RELIEF REQUESTED**

**A.    Section 1121(a) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

8.    The exclusive periods under section 1121(b) of the Bankruptcy Code are intended to afford debtors the opportunity to propose a chapter 11 plan and to solicit acceptances of such plan without the deterioration and disruption to the debtors' business operations that might be caused by the filing of competing plans by non-debtor parties. In circumstances where, as here, the Exclusive Periods, as extended by the First, Second, and Third Extensions, prove to be an insufficient time frame to confirm a meaningful chapter 11 plan, section 1121(d) of the Bankruptcy Code allows the Court to extend the Debtors' Exclusive Periods for "cause."

9.    It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case. *See 203 N. LaSalle St. P'ship v. Bank of Am., N.A.*, 1999 U.S. Dist. LEXIS 19425, *12 (N.D. Ill. 1999); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

10.    When determining whether cause exists for an extension of the Exclusive Periods, courts have relied on a variety of factors, each of which may provide sufficient grounds for extending the periods. In making such a determination, courts have considered: (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) whether the debtor is paying its debts as they come due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiating with creditors;

(7) the length of time the case has been pending; (8) whether the debtor is seeking the extension to pressure creditors; and (9) whether unresolved contingencies exist. *See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc.*, 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

11.    The fourth extension requested by this motion is well within the range of similar extensions granted by courts in this district in similar circumstances. *See, e.g., In re USA Discounters, Ltd.*, No. 15-11755 [D.I. 897] (Bankr. D. Del. Oct. 5, 2016) (granting fourth extension of exclusive periods by two months); *In re Trump Entm't Resorts, Inc., et al.*, No. 14-12103 [D.I. 1770] (Bankr. D. Del. Dec. 8, 2015) (granting fourth extension of exclusivity periods by three months); *In re Optim Energy, LLC*, No. 14-10262 [D.I. 1205] (BLS) (Bankr. D. Del. Aug. 14, 2015) (granting fourth extension of exclusive periods by approximately 60 days); *In re Revstone Indus., LLC, et al.*, No. 12-13262 [D.I. 1349] (Bankr. D. Del. Feb. 24, 2014) (granting fourth extension of the exclusivity periods by three months); *In re Quicksilver Res. Inc.*, No. 15-10585 [D.I. 1439] (LSS) (Bankr. D. Del. June 2, 2016) (granting fourth extension of exclusivity period by 60 days); *In re CD Liquidation Plus, LLC, f/k/a Cynergy Data, LLC, et al.*, No. 09-13038 [D.I. 889] (Bankr. D. Del. Aug. 23, 2010) (granting fourth extension of the exclusivity period for 90 days).

12.    The application of these factors to the facts and circumstances of these Chapter 11 Cases demonstrates that the requested extensions are both appropriate and necessary to afford the Debtors with time to confirm a chapter 11 plan.

B.    **Cause Exists for an Extension of the Debtors' Exclusive Periods**

    i.    **The Size and Complexity of these Cases, As Well As the Pending Adversary Proceeding, Necessitate Additional Time (Factors 1 and 2)**

13.    These Chapter 11 Cases have presented various complex and time-consuming issues, including: (1) communicating, and negotiating potential terms, with various lenders regarding DIP financing and a potential exit credit facility; (2) discussing other potential exit avenues with potential lenders; (3) defending and counter-prosecuting an adversary proceeding with creditor the Employees' Retirement System of the Government of the Virgin Islands ("**GERS**") regarding its status as a secured creditor (the "**Adversary Proceeding**"); (4) negotiating with GERS regarding its alleged ability to seek and obtain adequate protection regarding the Debtors' cash collateral motion; and (5) attending to myriad other matters associated with this case. These issues have required the full focus of the Debtors and their professionals since the Petition Date. The Debtors' efforts throughout these Chapter 11 Cases have been focused upon the execution of a comprehensive reorganization to maximize the value of the Debtors' assets for the benefit of their creditors.

14.    Specifically regarding the status of GERS's lien, the Debtors cannot finalize an appropriate plan of reorganization while this issue remains unresolved. After the First Extension, the Debtors and GERS participated in a mediation on June 18, 2018 to attempt to reach a global resolution regarding the status of GERS's lien. Although the Debtors and GERS did not reach a resolution on the date of the mediation, negotiations continued until the filing of the Adversary Proceeding.

15.    On July 30, 2018, GERS initiated the Adversary Proceeding, which has required the Debtors to expend substantial resources. To date, the Debtors have filed an answer and counter-

complaint in the Adversary Proceeding [Adv. Proc. No. 18-ap-50677, D.I. 3], exchanged and responded to significant discovery requests, and have recently completed a number of critical depositions. The Adversary Proceeding is now a major piece of these Bankruptcy Cases and litigation thereof has caused delay in the finalization of a confirmable plan of reorganization. Until such time as the Adversary Proceeding is resolved and GERS's distribution priority is determined, any potential plan will have to account for the various contingencies that could arise from resolution of the Adversary Proceeding.

> **ii.     The Debtors Have Made Substantial, Good-Faith Progress Toward an Ultimate Resolution of these Cases (Factors 3 and 5, 6, and 8)**

16.     Despite the delays caused by the Adversary Proceeding, the Debtors have made substantial progress in working towards finalizing a plan. As noted in the motions for the Second and Third Extension, the Debtors have contacted no fewer than nineteen lenders and discussed potential terms for DIP financing and an exit credit facility. As of the Second Extension, the Debtors and a lender had finalized a term sheet for exit financing. The Debtors and the lender remain in ongoing negotiations over the form of the loan documents and are hopeful to finalize the deal soon.  In addition, the Debtors and the lender have discussed other alternatives, such as a sale of the Debtors' assets.  Given the ongoing Adversary Proceeding, these negotiations are made substantially more complicated.  The Debtors hope to seek Court approval of this financing or to file a motion seeking to sell substantially all of their assets in short order.  Such alternatives will form the basis for the Debtors' ultimate plan.

17.     Prior to the initiation of the Adversary Proceeding, the Debtors conducted extensive talks with GERS's representatives regarding the cash collateral and lien issues. The Debtors and GERS each solicited and responded to discovery requests in the main bankruptcy case, which

resulted in the production of thousands of pages of relevant documents. The Debtors and GERS

also attended the mediation discussed *supra* on June 18, 2018, which was ultimately unsuccessful.

18.     The Debtors have no ulterior motive in seeking this fourth extension of the

Exclusive Periods and are in no way seeking an extension to pressure creditors. Rather, the

extensions are sought to finalize a plan that appropriately addresses the status of each of the

Debtors' creditors and allocates the Debtors' resources accordingly.

19.     Out of an abundance of caution, extension of the Exclusive Periods for the purpose

of confirming the plan without the distraction, cost, and delay of competing plans is completely

consistent with the goals of the Exclusive Periods. *See In re Texaco, Inc.*, 81 B.R. 806, 809 (Bankr.

S.D.N.Y. 1988) (stating purpose of exclusivity is to enable debtors to negotiate plans without

undue interruption).

### iii.     The Debtors Have and Will Continue to Pay Postpetition Administrative Expenses as They Come Due (Factor 4)

20.     Since filing these Chapter 11 Cases, the Debtors have taken numerous affirmative

steps to reduce costs and ensure that administrative expenses are paid. The Debtors respectfully

submit that, under the relevant facts and circumstances, the requested extension of the Exclusive

Periods will not prejudice the legitimate interests of creditors, as the Debtors continue to make

timely payment on their undisputed post-petition obligations.

### iv.     The Debtors' Cases Have Been Pending for Just Over One Year (Factor 7)

21.     As set forth above, the Debtors have already made significant steps towards

resolution of these cases. In light of the relatively short duration of these cases, especially given

the complexity of the industry in which the Debtors operate and the ongoing dispute with GERS,

the Debtors submit that the requested extension is reasonable and appropriate.

### C.      Allowing Exclusivity to Lapse Would Harm the Debtors' Estates

22.      Termination of the Exclusive Periods would adversely impact the progress of these Chapter 11 Cases. Not extending, and thus terminating, exclusivity would permit any party in interest to propose a plan and frustrate the efforts to date of the Debtors and its principal stakeholders. This would foster a chaotic environment with no central focus, and threaten the Debtors' efforts to maximize the value of the estates for the benefit of the Debtors' creditors.

23.      Based upon the foregoing, the Debtors respectfully submit that cause exists in these cases to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

### <u>NOTICE</u>

24.      Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel: (i) the U.S. Trustee; (ii) the parties included on the Debtors' largest unsecured creditors list, and (iii) any parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

### <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 14, 2019
       Wilmington, Delaware

BAYARD, P.A.

*/s/ Evan T. Miller*
Evan T. Miller (No. 5364)
Greg J. Flasser (No. 6154)
Sophie E. Macon (No. 6562)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail: emiller@bayardlaw.com
       gflasser@bayardlaw.com
       smacon@bayardlaw.com

- and -

B. Keith Poston *(admitted pro hac vice)*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
1320 Main Street
Columbia, SC 29201
Phone: (803) 255-9518
Facsimile: (803) 255-9038
E-Mail: keith.poston@nelsonmullins.com

Shane G. Ramsey *(admitted pro hac vice)*
John T. Baxter *(admitted pro hac vice)*
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
150 Fourth Avenue, North, Suite 1100
Nashville, TN 37219
Phone: (615) 664-5355
Facsimile: (615) 664-5399
E-Mail: shane.ramsey@nelsonmullins.com
       john.baxter@nelsonmullins.com

*Counsel to the Debtors and Debtors in Possession*