IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>LIFE SETTLEMENTS ABSOLUTE RETURN I, LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 17-13030 (MFW)<br>(Jointly Administered)<br><br>**Related D.I.:** 265, 281 |

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365, 503 AND 507 AND FED. R. BANKR. P. 2002, 6004, AND 6006 (A) ESTABLISHING BID AND AUCTION PROCEDURES FOR THE PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING THE PURCHASE AND SALE AGREEMENT; (C) APPROVING RELATED BID PROTECTIONS; (D) SCHEDULING AN AUCTION AND A SALE HEARING AND APPROVING NOTICE THEREOF; (E) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED AND NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF**

Upon consideration of the *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 And 507 and Bankruptcy Rules 2002, 6004 and 6006 for (I) Entry of an Order (A) Establishing Bid and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (E) Granting Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 265] (the "**Sale**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Life Settlements Absolute Return I, LLC (7992) and Senior LS Holdings, LLC (5731). The mailing address for the Debtors, solely for purposes of notices and communications, is: 6650 Rivers Avenue, Suite 105 #81921, North Charleston, SC 29406-4829, with copies to Nelson Mullins Riley & Scarborough LLP, c/o Shane G. Ramsey, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 and Bayard, P.A., c/o Evan T. Miller, 600 N. King Street, Suite 400, Wilmington, DE 19801.

**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"); and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Sale Motion having been given under the circumstances; and upon the record of the hearing on the Sale Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED:**[3]

A.     This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Purchase and Sale Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     Good and sufficient notice of the Sale Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein.

C.     A reasonable opportunity to object or to be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.     The notice proposed by the Debtors is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the relief sought in the Sale Motion.

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the revised Purchase and Sale Agreement attached to the Notice of Revised Bid Procedures and Order Related to Same between The Settlement Group, Inc. (the "**Proposed Purchaser**") and Life Settlements Absolute Return I, LLC and Senior LS Holdings, LLC (the "**TSG Purchase and Sale Agreement**"), as applicable.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.       The TSG Purchase and Sale Agreement attached hereto as **Schedule 4** represents the best offer the Debtors have received as a result of their post-petition efforts to market the Property.[4]

F.       No party, to date, has offered to enter into an agreement for the purchase of the Property on terms presently acceptable to the Debtors other than the Proposed Purchaser, as set forth in the TSG Purchase and Sale Agreement. The execution of the Purchase and Sale Agreement is a necessary prerequisite to determining whether any party other than the Proposed Purchaser is willing to enter into a definitive agreement for the acquisition of the Property on terms acceptable to the Debtors and their creditor constituencies.

G.       The Debtors have articulated good and sufficient business reasons for this Court to approve: (a) the Revised Bid Procedures; (b) the scheduling of a bid deadline, Auction and Sale Hearing with respect to the proposed sale of the Property; (c) payment of the Break-Up Fee and Expense Reimbursements; and (d) the establishment of procedures to fix the Cure Amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of certain executory contracts and unexpired nonresidential real property leases (the "**Designated Executory Contract**").

H.       The Revised Bid Procedures are reasonably designed to maximize the value to be obtained for the Property.

I.       The Break-Up Fee and the Expense Reimbursements is: (a) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser and BPCP; (b) reasonable and appropriate in light of the size and nature of the proposed sale, comparable transactions, the commitments that have been made, and the efforts that have been

---

[4] The TSG Purchase and Sale Agreement was received after the BPCP original stalking horse APA was executed and filed with this Court.

and will be expended by the Proposed Purchaser; and (c) necessary to induce the Proposed Purchaser to continue to pursue the purchase of the Property and to be bound by the Purchase and Sale Agreement.

J.  The assurance of the payment of the Break-Up Fee and Expense Reimbursements: (a) will promote more competitive bidding by inducing the Proposed Purchaser's bid, which otherwise would not have been made and which may be the highest and/or best available offer for the Property; (b) induced the Proposed Purchaser to, conduct extensive due diligence and propose the transaction, including, among other things, submission of a bid that will serve as a minimum bid on which all other bidders can rely; and (c) will provide a benefit to the Debtors' estates by increasing the likelihood that the price at which the Property is sold will reflect market value.[5]

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. The request for entry of the Bid Procedures Order is **GRANTED** as provided herein.

2. All objections to the request for entry of the Bid Procedures Order or the relief provided herein, to the extent not provided for herein or that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

**Approval of the Purchase and Sale Agreement and Bid Procedures**

3. Immediately upon entry of this Bid Procedures Order, the TSG Purchase and Sale Agreement executed on February 19, 2019, as revised and modified herein, shall be binding upon the parties thereto in accordance with its terms. For the avoidance of doubt, to the extent

---

[5] The Break-Up Fee and Expense Reimbursements likewise induced BPCP to make the original stalking horse bid and conduct extensive due diligence.

{BAY:03428727v10}                                4

any conflict between the terms of the TSG Purchase and Sale Agreement and the terms of this Bid Procedures Order, the terms of this Bid Procedures Order shall control.

4. The Revised Bid Procedures, in substantially the form attached hereto as **Schedule 1**, are incorporated herein, approved in their entirety except as otherwise provided herein, and shall apply with respect to the sale of the Property. The Debtors are authorized to take all actions incidental, necessary and appropriate to implement the Revised Bid Procedures.

5. A break-up fee plus expense reimbursement is hereby allowed and granted as an administrative expense pursuant to 11 U.S.C. § 503(b)(1) to the Proposed Purchaser in an amount not to exceed $300,000, and subject to invoices being presented and subject to review pursuant to the terms of this Bid Procedures Order (the "**TSG Break-Up Fee and Expense Reimbursement**"). A break-up fee plus expense reimbursement is also hereby allowed and granted as an administrative expense pursuant to 11 U.S.C. § 503(b)(1) to BPCP Life Settlement LLC ("**BPCP**") in an amount not to exceed $300,000, and subject to invoices being presented and subject to review pursuant to the terms of this Order (the "**BPCP Break-Up Fee and Expense Reimbursement**" and, together with the TSG Break-Up Fee and Expense Reimbursement, the "**Break-Up Fee and Expense Reimbursements**"). The Proposed Purchaser and/or BPCP shall file a notice with the Court of the amount of its Break-Up Fee and Expense Reimbursement, including any and all supporting documents, by **April 18, 2019.**

6. The Proposed Purchaser and BPCP may seek to have the Break-Up Fee and Expense Reimbursements paid as part of any closing on the sale of the Property, or otherwise pursuant to 11 U.S.C. § 506(c) or any such other applicable means. This Court shall retain jurisdiction to hear any dispute with respect to BPCP or the Proposed Purchaser's entitlement to the Break-Up Fee and Expense Reimbursements as set forth herein; (ii) all expenses for which

payment is sought via the Break-Up Fee and Expense Reimbursements must be both (a) reasonable and (b) documented; and (iii) the Office of the United States Trustee and creditors of the Debtors shall have the opportunity to object to expenses for which payment is sought via the Break-Up Fee and Expense Reimbursements by filing such objection within ten (10) days after documentation of such expenses is filed, but in all cases prior to the Sale Hearing.  The Court will determine all disputes relating to the Break-Up Fee and Expense Reimbursements at the Sale Hearing, including whether such expenses are payable at the closing of any sale of the Property pursuant to 11 U.S.C. § 506(c).

7. As further described in the Revised Bid Procedures, the deadline for submitting bids for the Property (the "**Bid Deadline**") is **April 12, 2019, at 5:00 p.m. (prevailing Eastern Time)**.  No bid shall be deemed to be a Qualifying Bid (as defined in the Revised Bid Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Revised Bid Procedures.  As set forth in the Revised Bid Procedures, any Qualifying Bid shall provide sufficient cash to pay, in full, at closing, an amount equal to or greater than the aggregate of (a) the consideration offered for the Property in the Purchase and Sale Agreement, plus (b) the Break-Up Fee and Expense Reimbursements (i.e., $600,000.00), plus (c) $100,000.00.  For the avoidance of doubt, all subsequent bids submitted by the Proposed Purchaser or BPCP shall be credited $300,000.00 to account for their own Break-Up Fee and Expense Reimbursement.

8. The Debtors may conduct an Auction in accordance with the Revised Bid Procedures.  If one or more Qualifying Bids are timely received by the Debtors in accordance with the Revised Bid Procedures, the Auction shall take place on **April 17, 2019 at 9:00 a.m. (prevailing Eastern Time),** at the offices of Nelson Mullins Riley & Scarborough LLP, 104

South Main Street, Suite 900, Greenville, SC 29601, or such other place and time as the Debtors shall notify the Proposed Purchaser, any Qualifying Bidders (as defined in the Bid Procedures), and other invitees (as determined by the Debtors).  If, however, no Qualifying Bid is received by the Bid Deadline, then the Auction will not be held, and the Debtors shall designate the Proposed Purchaser as the Prevailing Purchaser and seek Bankruptcy Court approval of the Purchase and Sale Agreement.

9.     At any Auction, Qualified Bidders must submit bids in cash increments of at least $100,000 higher than the previous bid, subject and as set forth in the Bid Procedures.

10.    Each Qualifying Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.  All bidding activity at the Auction shall be transcribed, videotaped, or both.  The Auction will be conducted openly, and any of the Debtors' creditors will be permitted to attend.

11.    After the Auction, the Debtors shall file notice of the identity of the successful bidder, back up bidder, and the amount of the winning bid and back up bid with the court by the earlier of (a) 5 business hours after the close of the Auction or (b) noon on the first business day after the close of the Auction.  At that same time, the Debtors shall serve notice of the same by fax, email or (if neither is available) overnight courier to all counterparties whose contracts are to be assumed and assigned and to all creditors who have requested the same in writing and provided their fax numbers, email address, or street address to counsel for the Debtors.

12.    In the event that (a) an Auction is conducted, the deadline for objections related to the conduct of the Auction itself shall be at the Objection Deadline; and (b) the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objections relating to (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and

(ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder shall be at the Objection Deadline.

### **Scheduling of Sale Hearing and Related Notices**

13. The Notice of Auction and Sale Hearing, substantially in the form attached as **Schedule 2** hereto (the "**Notice of Auction and Sale Hearing**"), is approved.

14. The Sale Hearing shall be held before this Court on **April 30, 2019 at 10:30 a.m. (prevailing Eastern Time)**.

15. Objections to the sale of the Property, or the relief requested in the Sale Motion, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before **4:00 p.m. (prevailing Eastern Time) on April 23, 2019** (the "**Objection Deadline**"); and (d) be served so as to be received by no later than the Objection Deadline, on the parties identified in **Exhibit A** attached hereto (the "**Notice Parties**"). All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

16. On or before five (5) days after entry of this Order, the Debtors will cause the Notice of Auction and Sale Hearing and this Order to be sent by first-class mail postage prepaid to all parties that were served with the Sale Motion.

16. In addition to the foregoing, electronic notification of this Sale Motion, this Order and the Notice of Auction and Sale Hearing also will be posted on the Court's website at http://www.deb.uscourts.gov.

17. No later than five (5) days after the entry of this Order, the Debtors are instructed to contact all parties known or reasonably believed to have expressed an interest in acquiring some or all of the Property within the last twelve months.

**Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases**

18. On or before five (5) business days after the entry of this Order, the Debtors shall serve by first class mail, a notice of potential assumption, assignment and/or transfer of the Designated Executory Contract, substantially in the form attached hereto as **Schedule 3** (the "**Notice of Assumption and Assignment**") on all non-debtor parties to the Designated Executory Contracts, *provided, however,* that the identification of a contract or lease in a Notice of Assumption and Assignment does not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and leases listed in a Notice of Assumption and Assignment. The Notice of Assumption and Assignment shall identify whether a Designated Executory Contract is included as part of the Property and the cure amount(s) the Debtors assert, based on the Debtor's records, must be paid in order to cure defaults outstanding under each Designated Executory Contract to permit the Debtors to assume such contracts (the "**Cure Amounts**"), as of such date (the "**Cure Date**"). Additionally, if the Debtors identify additional executory contracts or unexpired leases that may be assumed by the Debtors and assigned to Proposed Purchaser not set forth in the original Notice of Assumption and Assignment, the Debtors may send a supplemental notice (a "**Supplemental Notice of Assumption and Assignment**") to the applicable counterparty or counterparties to such additional executory contracts and unexpired leases, provided, however, that a counterparty to an Assumed Contract shall not be barred from

seeking additional amounts on account of any defaults occurring between the service of the Cure Notice and the assumption of the contract.

19. Unless the non-debtor counterparty to a Designated Executory Contract files an objection (the "**Cure Amount/Assignment Objection**") to any of (a) the Cure Amount relating to a Designated Executory Contract, or (b) the proposed assumption and assignment of a Designated Executory Contract **no later than three (3) days before the Auction** (collectively, the "**Cure/Assignment Objection Deadline**") and serves a copy of the Cure Amount/Assignment Objection so as to be actually received no later than the Cure/Assignment Objection Deadline by the Notice Parties, then such non-debtor counterparty shall (a) forever be barred from objecting to the Cure Amount and asserting any additional cure or other amounts as of the Cure Date, with respect to a Designated Executory Contract, and the Debtors shall be entitled to rely solely upon the Cure Amount, and (b) if the Designated Executory Contract is part of the Property, and the Proposed Purchaser is the Purchaser, be deemed to have consented to the assumption, assignment and/or transfer of such Designated Executory Contract to the Proposed Purchaser, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Proposed Purchaser or such other Purchaser or any other assignee of the relevant Designated Executory Contract that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Designated Executory Contract.

20. If an objection challenges a Cure Amount, the objection must set forth the pre-petition cure amount being claimed by the objecting party (the "**Claimed Cure Amount**") with appropriate documentation in support thereof. Upon receipt of an objection to a Cure Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure Amount in

reserve in an account with Wells Fargo Bank, N.A., as Indenture Trustee, pending further order of the Court or agreement between the Debtors and the objecting party. If the Debtors hold the Claimed Cure Amount in reserve, the Debtors may assume and assign the Designated Executory Contract subject to such objection without further delay.

21. In the event that the Proposed Purchaser is not the Purchaser for the Property and for the Designated Executory Contract identified in the Notice of Assumption and Assignment, immediately after the conclusion of the Auction for the Property, the Debtors will serve a notice identifying the Purchaser on the non-debtor counterparties to the Designated Executory Contract identified by such Purchaser. The non-debtor counterparties to such Designated Executory Contracts may, at or prior to the Sale Hearing, object to the assumption, assignment and/or transfer of such Designated Executory Contract to Purchaser solely on the issue of whether Purchaser can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. Any non-debtor party to a Designated Executory Contract that does not object to the assignment of its respective Designated Executory Contract shall be deemed to have consented to the assumption and assignment of such Designated Executory Contract to Purchaser. Nothing in this paragraph shall extend or shorten or otherwise affect the Cure Amount/Assignment Objection Deadline.

22. The Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Property, substantially in the form annexed hereto as **Schedule 3**, hereby is approved.

**D.     Other Provisions**

23.     Copies of the Sale Motion, together with all exhibits and schedules thereto, this Order, the Notice of Auction and Sale Hearing, and the Notice of Assumption and Assignment will be available upon request from counsel to the Debtors, directed to:

Nelson Mullins Riley & Scarborough LLP
Attn: B. Keith Poston
1320 Main Street
Columbia, SC 29201
Telephone: 803-255-9518
Facsimile: 803-255-9038
Email: keith.poston@nelsonmullins.com

- or -

Bayard, P.A.
Attn: Evan T. Miller
600 North King Street, Suite 400
Wilmington, DE 19801
Telephone: 302-655-500
Facsimile: 302-658-6395
Email: emiller@bayardlaw.com

24.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on the agenda for the date scheduled for said hearing.

25.     Subject to the provisions of the Purchase and Sale Agreement, the Bid Procedures and this Order, the Debtors shall have the right, as they may reasonably determine in their business judgment, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is the highest and best bid and proposal and which is the next highest and best bid and proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bid Procedures or

the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some portion of the Property from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders and the Proposed Purchaser; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction or Sale Hearing in open court without further notice; and (j) withdraw the Sale Motion at any time, with or without prejudice, <u>provided, however</u>, in the event that the Sale Motion is withdrawn, all parties' rights to argue that the Break-Up Fee and Expense Reimbursements shall or shall not be payable are expressly reserved.  For the avoidance of doubt, the Proposed Purchaser is a Qualifying Bidder and the transaction set forth in, and by virtue of, the Purchase and Sale Agreement, is a Qualifying Bid. Likewise, BPCP and the Trustee are Qualifying Bidders.

26.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

27.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

**Dated: February 26th, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

{BAY:03428727v10}    13