## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| LIFE SETTLEMENTS ABSOLUTE RETURN I, LLC, *et al.*,[1] | Case No. 17-13030 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket Nos: 265, 278, 311, 356, 357, 359, 370 371, 372 & 373** |

## ENSIGN PEAK ADVISORS, INC.'S (I) OBJECTION TO REQUESTS FOR PAYMENT OF BREAK-UP FEES AND EXPENSES REIMBURSEMENTS FILED BY THE SETTLEMENT GROUP, INC. AND BPCP LIFE SETTLEMENT LLC AND (II) <u>JOINDER TO THE OTHER OBJECTIONS THERETO</u>

Ensign Peak Advisors, Inc. ("**Ensign Peak**") hereby files this (i) objection to (a*) BPCP Life Settlement LLC's Notice Seeking Payment of Break-Up Fee and Expense Reimbursement and Payment from Sale Proceeds* [Docket No. 356] (the "**BPCP Motion**"), (b) *Notice of Amounts of Break-Up Fee and Expense Reimbursement of The Settlement Group, Inc.* [Docket No. 357] (the "**TSG Notice**") and (c) *Amended Motion of The Settlement Group, Inc. for Entry of an Order Authorizing the Surcharge of Secured Creditor's Collateral (Proceeds of Sale of Debtors' Assets)* [Docket No. 359] (the "**TSG Surcharge Motion**") and (ii) joinder to (a) *Wells Fargo Bank, N.A.'s Omnibus Response to (I) Amended Motion of The Settlement Group, Inc. for Entry of an Order Authorizing the Surcharge of Secured Creditor's Collateral (Proceeds of Sale of Debtors' Assets) and (II) BPCP Life Settlement LLC's Notice Seeking Payment of Break-Up Fee and Expense Reimbursement and Payment from Sale Proceeds* [Docket No. 371] and (b) the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Life Settlements Absolute Return I, LLC (7992) and Senior LS Holdings, LLC (5731). The mailing address for the Debtors, solely for purposes of notices and communications, is: 6650 Rivers Avenue, Suite 105 #81921, North Charleston, SC 29406-4829, with copies to Nelson Mullins Riley & Scarborough LLP, c/o Shane G. Ramsey, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 and Bayard, P.A., c/o Evan T. Miller, 600 N. King Street, Suite 400, Wilmington, DE 19801.

*Joinder of the Debtors in Wells Fargo Bank, N.A.'S Objection to (I) Break-Up Fee and Expense Reimbursement Requests and (II) Motion of The Settlement Group, Inc. to Surcharge Collateral* [Docket No. 372] (jointly, the "**Objections**").  In support of this objection and joinder (this "**Objection and Joinder**"), Ensign Peak respectfully states as follows:

### BACKGROUND

1.    On December 27, 2017 (the "**Petition Date**"), each of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are currently operating their business as debtors-in-possession pursuant sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee, official committee, or examiner has been appointed in these cases.

2.    Prior to the Petition Date, Debtor Life Settlements Absolute Return I, LLC ("**LSAR**") entered into that certain Trust Indenture, dated June 12, 2008 (the "**Indenture**") with Wells Fargo Bank, N.A., as indenture trustee (the "**Trustee**").  Docket No 7 ¶ 27.  Pursuant to the Indenture, LSAR issued preference notes in the original principal amount of $40 million (the "**Preference Notes**"), mezzanine notes in the original principal amount of $24 million (the "**Mezzanine Notes**"), and residual notes in the original principal amount of $110,222,499 (the "**Residual Notes**" and together with the Preference Notes and the Mezzanine Notes, the "**Noteholders**").  *Id.*  Ensign Peak is the sole holder of the Preference Notes and, pursuant to the Indenture, has the authority to direct the Trustee to take certain actions as identified therein.

3.    On March 30, 2018, the Trustee filed a secured claim [Claim No. 2] on behalf of itself and the Noteholders.  No party has objected to the Trustee's claim, and the Trustee is the only secured party in the Trust Indenture.

2

4.      On January 29, 2019, the Debtors filed a motion [Docket No. 265] (the "**Sale Motion**")[2] seeking entry of orders (i) establishing timelines and procedures for the sale of all or substantially all of the Debtors' assets; (ii) approving certain bid protections for the stalking horse bidder; (iii) approving the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances and interests.; and (iv) authorizing the assumption and assignment of certain executory contracts. Shortly before filing the Sale Motion, the Debtors entered into a stalking horse agreement with BPCP Life Settlement LLC ("**BPCP**") for the sale of substantially all of the Debtors' assets. *See* Sale Motion ¶ 31.

5.      On February 14, 2019, the Debtors entered into a replacement stalking horse agreement with The Settlement Group, Inc. ("**TSG**") for the sale of substantially all of the Debtors' assets. *See* Docket No. 281.

6.      Following a hearing on the Sale Motion on February 19, 2019, the Court entered an order [Docket No. 311] (the "**Bid Procedures Order**") approving certain initial relief requested in the Sale Motion, including granting each of BPCP and TSG an administrative claim in an amount not to exceed $300,000 pursuant to section 503(b)(1) of the Bankruptcy Code on account of a break-up fee plus expense reimbursement (the "**Break-Up Fee and Expense Reimbursements**"). Bid Procedures Order ¶ 5. However, the entitlement of BPCP and TSG to payment of a Break-Up Fee and Expense Reimbursement was subject to invoices being presented and any expenses being both is reasonable and documented. *Id.* at ¶¶ 5–6.

7.      Pursuant to the Bid Procedures Order, the Debtors commenced the Auction of substantially all of their assets at 9:00 a.m. (prevailing Eastern Time) on April 17, 2019. As permitted by the Bid Procedures Order, the Debtors ultimately adjourned the Auction until 3:00

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Sale Motion or the Bid Procedures Order (as defined herein).

p.m. (Eastern Time) on April 26, 2019, at which time the Debtors determined that the Trustee's

credit bid (the "**Credit Bid**"), on behalf of Ensign Peak, was the highest and best offer and

therefore the winning bid.  Docket No. 370.

8.     On April 18, 2019, BPCP filed the BPCP motion seeking payment of a Break-Up

Fee and Expense Reimbursement in the amount of $300,000.  On that same day, TSG filed the

TSG Notice seeking a Break-Up Fee and Expense Reimbursement in the amount of $300,000.

9.     On April 19, 2019, TSG filed the TSG Surcharge Motion seeking authority to

surcharge the proceeds of the sale of the Debtors' assets pursuant to section 506(c) of the

Bankruptcy Code.

<u>**OBJECTION AND JOINDER**</u>

10.    Ensign Peak hereby joins in the Objections and incorporates by reference all of

the grounds and legal arguments set forth therein.  For the reasons set forth in the Objections, the

Court should deny the relief sought by the BPCP Motion, the TSG Notice and the TSG

Surcharge Motion.

11.    In addition to the grounds and legal arguments set forth in the Objections, Ensign

Peak notes the following:

- BPCP was not the stalking horse bidder and did not submit a Qualified Bid or otherwise participate in the Auction.  Indeed, to the extent the sale and auction process resulted in any value to the Debtors' estates, BPCP watched it happen.  The Court should not award a Break-Up Fee and Expense Reimbursement to a party who did not set a floor for, or participate in, the Auction.

- BPCP seeks reimbursement of approximately $150,000 in legal fees and expenses related to fees and expenses that BPCP incurred in connection with providing postpetition financing to the Debtors—financing that never materialized.  BPCP Motion at Ex. A.  Certain of these fees and expenses were incurred in December 2017, which is nearly 1.5 years ago.  *Id.* Indeed, BPCP did not start incurring fees and expenses in connection with the Sale Motion until early January 2019.  *Id.*  Further, while some of

these fees and expenses were incurred in connection with performing diligence in connection with providing potential DIP financing, some of the fees were incurred in drafting various loan documentation which cannot possibly provide any benefit to the sale process. *See id.* (numerous time entries between January 2018 through December 2018 regarding revision of a DIP term sheet, the review and revision of various loan documents, and revision of an indenture). At a minimum, should the Court grant BPCP a Break-up Fee and Expense Reimbursement, the Court should not award BPCP reimbursement of legal fees and expenses unrelated to the Sale Motion.

- TSG's conduct over the course of these cases has been a detriment to the Debtors' estates and not a benefit, which necessitates this Court denying its request for a Break-up Fee and Expense Reimbursement under any standard. Among other things, TSG's refusal to promptly turn over certain medical records—medical records that were the Debtors' property—resulted in the Debtors and their estates incurring significant unnecessary fees and expenses. For example, because of TSG's conduct, the Debtors were required to prepare and file a motion directing TSG to turn over such records and attend and participate in a contested evidentiary hearing regarding such motion. *See* Docket No. 333. Shockingly, TSG is even seeking reimbursement pursuant to the TSG Notice and TSG Surcharge Motion of approximately $25,000 in legal fees and expenses that it incurred related to its efforts to deny the Debtors and other potential bidders access to such records. TSG Notice at Exhibit A. It is hard to fathom how any of the fees and expenses that TSG incurred seeking to prevent the Debtors and potential bidders from gaining access to the Debtors' property could possibly have provided a benefit to the Debtors' estates. Yet, it appears that TSG is seeking reimbursement of <u>all</u> such amounts. Further, after TSG's bid was not declared the winning bid, TSG has continued to force the Debtors and their estates to incur significant fees and expenses in connection with defending against its frivolous claims that the Auction did not yield the highest and best bid. Indeed, TSG—who is nothing more than a jilted bidder—filed an objection to the Credit Bid that will require the Debtors and their estates to incur significant fees and expenses preparing for what will likely be a contested and unnecessary evidentiary hearing. *See* Docket No. 373. The Court should not award TSG a Break-Up Fee and Expense Reimbursement when its actions significantly increased the administrative costs to the Debtors' estates and other parties and interest.

- If the Court were to award the entirety of the Break-up Fee and Expense Reimbursement to BPCP and TSG, such amount would be 10% of the $6 million stalking horse bid, which is well in excess of the amount that this Court typically approves. *See, e.g.*, *In re Promise Healthcare Grp., LLC*, No 18-12492 (CSS) (Docket No. 571) (Bankr. D. Del. Feb. 1, 2019)

(approving breakup fee and expense reimbursement of approximately 3.4% of stalking horse bid); *In re AtopTech, Inc.*, Case No. 17-10111 (MFW) (Docket No. 234) (Bankr. D. Del. Apr. 21, 2017) (approving breakup fee and expense reimbursement of approximately 5.6% of stalking horse bid); *In re Am. Apparel, LLC*, No. 16-12551 (BLS) (Docket No. 216) (Bankr. D. Del. Dec. 5, 2016) (approving breakup fee and expense reimbursement fee of 4.5% of stalking horse bid); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Docket No. 233) (Bankr. D. Del. Nov. 30, 2016) (approving breakup fee and expense reimbursement of approximately 4% of stalking horse bid); *In re Vertis Holdings, In*c., No. 12-12821 (CSS) (Docket No. 206) (Bankr. D. Del. Nov. 2, 2012) (approving a breakup fee and expense reimbursement of 4% of stalking horse bid). There is nothing remarkable about these cases that warrants such an extraordinarily high amount. Indeed, the facts of these cases counsel against such a high amount because the cash bids prior to and at the Auction were so low that the Debtors' secured lenders were forced to exercise their rights to credit bid as a defensive measure to maximize the return on their loans. The Court should not add insult to injury and require the Debtors' secured lenders to pay another $600,000 in cash to bidders who did nothing to aid the sale process other than forcing the Debtors' secured lenders to credit bid.

- Finally, to the extent that the Court is inclined to approve the Break-up Fee and Expense Reimbursement for either BPCP or TSG, such amounts should not include any "break-up fee" component. Under these circumstances, i.e., where there were two bidders who were bidding before the Auction and even before approval of the Bidding Procedures, the stalking horse protections, if any, should be limited to reasonable and documented expenses that meet the standard for approval under bankruptcy code sections 503(b) and/or 506(c), as applicable.

## <u>Reservation of Rights</u>

12.     Ensign Peak reserves its right to assert other and further objections to the relief requested by BPCP and TSG and to supplement this Objection and Joinder if necessary.

WHEREFORE, for the reasons set forth above and in the Objections, Ensign Peak respectfully requests that the Court (i) sustain the Objections and deny the BPCP Motion, the TSG Notice and the TSG Surcharge Motion and (ii) grant Ensign Peak such other and further relief as the Court deems just and proper.

Dated:  April 29, 2019
   Wilmington, Delaware

*/s/ Brendan J. Schlauch*
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  defranceschi@rlf.com
   shapiro@rlf.com
   schlauch@rlf.com

*Attorneys for Ensign Peak Advisors, Inc.*