## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| LIFE SETTLEMENTS ABSOLUTE RETURN I, LLC, *et al.*,[1] | Case No. 17-13030 (MFW) (Jointly Administered) |
| Debtors. | Related D.I.: 265, 311, 370, 380, & 384 |

### ORDER (A) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS TO ENSIGN PEAK ADVISORS, INC. IN ACCORDANCE WITH THE TERMS OF THE ASSET PURCHASE SALE AGREEMENT FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) GRANTING RELATED RELIEF

Upon the Debtors' *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 and 507 and Bankruptcy Rules 2002, 6004, and 6006 for (I) Entry of an Order (A) Establishing Bid and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 265] (the "**Sale Motion**"),[2] for entry of orders pursuant to sections 105, 363 and 365 of title 11 of the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Life Settlements Absolute Return I, LLC (7992) and Senior LS Holdings, LLC (5731). The mailing address for the Debtors, solely for purposes of notices and communications, is: 6650 Rivers Avenue, Suite 105 #81921, North Charleston, SC 29406-4829, with copies to Nelson Mullins Riley & Scarborough LLP, c/o Shane G. Ramsey, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 and Bayard, P.A., c/o Evan T. Miller, 600 N. King Street, Suite 400, Wilmington, DE 19801.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein) and the Sale Motion, as applicable. To the extent of any inconsistency between such capitalized terms, the Asset Purchase Agreement shall govern.

United States Code (the "**Bankruptcy Code**"), and rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (a) authorizing a sale process for substantially all of Debtors' assets and approving the sale of the assets free and clear of all Liens, claims, encumbrances and other interests (excluding the Buyer's Assumed Liabilities under certain Asset Purchase Agreement (substantially in the form attached hereto as **Exhibit A**, the "**Asset Purchase Agreement**")) pursuant to the terms and conditions of the Asset Purchase Agreement by and between Life Settlements Absolute Return I, LLC and Senior LS Holdings, LLC (collectively, the "**Debtors**"), on the one hand, and each of Ensign Peak Advisors, Inc., the sole owner of the Preference Notes under the Trust Indenture (each as defined herein) (the "**Buyer**"), Wells Fargo Bank, N.A., solely in its capacity as indenture trustee (the "**Trustee**"), and Government Employees' Retirement System of the Virgin Islands, on the other hand, dated as of April 26, 2019; and (b) granting related relief; and the Court having entered the *Order Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 and 507 And Fed. R. Bankr. P. 2002, 6004, and 6006 (A) Establishing Bid and Auction Procedures for the Proposed Sale of Substantially All of The Debtors' Assets, (B) Approving the Purchase and Sale Agreement, (C) Approving Related Bid Protections, (D) Scheduling an Auction and a Sale Hearing and Approving Notice Thereof; (E) Approving Procedures for Determining Cure Amounts For Executory Contracts and Unexpired Leases to be Assumed and Assigned and Notice Thereof; and (F) Granting any Related Relief* [Docket No. 311] on February 26, 2019 (the "**Bid Procedures Order**"); and upon adequate and sufficient notice of the Sale Motion, the auction and the hearing held before the Court on May 1, 2019 (the "**Sale Hearing**"); and the Court having reviewed and considered (a) the Sale Motion and all relief related thereto, (b) the objections and related responses thereto, and (c) the statements of counsel and evidence presented in support of the relief requested by the

Debtors at the hearing after which the Bid Procedures Order was entered by the Court (the "**Bid Procedures Hearing**") and at the Sale Hearing; and it appearing that the Court has jurisdiction over the Sale Motion and judicial authority to enter a final order with respect to this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion, at the Bid Procedures Hearing and at the Sale Hearing establish just cause for the relief granted herein (the "**Sale Order**"); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; and upon the record of the Bid Procedures Hearing and the Sale Hearing, and all other pleadings and proceedings in these Chapter 11 Cases, including the Sale Motion; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT:**[3]

**Jurisdiction, Final Order and Statutory Predicates**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    The statutory predicates for the relief requested in the Sale Motion are §§ 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Notice of the Sale and Auction**

D.      In accordance with the Bid Procedures Order approving, among other things, the proposed procedures for bidding at the auction, actual written notice of the Sale Motion was provided to the following parties (the "**Notice Parties**"): (a) the United States Trustee for the District of Delaware; (b) the creditors listed on the Debtors' consolidated list of 20 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (c) counsel to the Buyer; (d) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (e) all entities known to have expressed an interest in a transaction with respect to the Assets or that has been identified by the Debtors or their advisors as a potential buyer of the Assets; and (f) all parties requesting notice pursuant to Bankruptcy Rule 2002.

E.      Notice of the Auction was published on March 7, 2019 in the *Life Settlements Report* and by banner advertisement publications linking to the Notice of Auction thereafter in the *Life Settlements Report* on March 14, 2019, March 21, 2019, March 28, 2019, April 4, 2019, and April 11, 2019.

F.      Notice of the Auction and Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

G.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, the Sale and the transactions contemplated thereby has been provided in accordance with the Bid Procedures Order, sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008.  The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing or the Sale is or shall be required.

H.      The disclosures made by the Debtors concerning the Sale Motion, the Asset Purchase Agreement, the Auction and the Sale are good, complete and adequate.

I.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

### Good Faith of Buyer

J.      The Asset Purchase Agreement was negotiated, proposed and entered into by the Seller and the Buyer without collusion, in good faith and at arm's length.

K.      Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.   Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate consideration provided by the Buyer for the Assets (the "**Purchase Price**") was not controlled by any agreement among any potential or actual bidder for the Assets.

L.      The Buyer is purchasing the Assets in good faith, is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  The Buyer has proceeded in good faith in all respects in connection with this proceeding, as, *inter alia*: (a) the Buyer complied with the provisions in the Bid Procedures Order; (b) the Buyer's bid was subject to the competitive bidding procedures set forth in the Bid Procedures Order; and (c) all payments to be made by the Buyer in connection with the Sale have been disclosed.

### Credit Bid Valid

M.      In accordance with that certain trust indenture (the "**Trust Indenture**") governing the Buyer and the Trustee and all other agreements, documents and instruments executed and/or delivered to or in favor of the Trustee in connection with the Trust Indenture and the Bid

Procedures Order, the holders of 100% of the Preference Notes (as defined in the Trust Indenture) directed the Trustee to, among other things, (i) authorize the Buyer to, for and on behalf of the Trustee, to execute and deliver a credit bid for the Assets so as to be delivered pursuant to the terms of the bid procedures, and (ii) authorize the Buyer to acquire and assume from the Seller, pursuant to section 363 of the Bankruptcy Code, all of the Assets in accordance with the Asset Purchase Agreement.  As a result of such direction from the Buyer, the Court finds that the Buyer has the full power and authority to execute, deliver, and perform the Asset Purchase Agreement.

N.    The Trustee holds allowed secured claims for all principal, interest, and other obligations and amounts owing by the Debtors to the Trustee arising under or in connection with the Trust Indenture, and was duly authorized to credit bid on behalf of the Buyer all of such claims under the Asset Purchase Agreement pursuant to the Bid Procedures Order.  The Trustee's credit bid (the "**Credit Bid**") on behalf of the Buyer pursuant to the Asset Purchase Agreement was a valid, proper and enforceable offer pursuant to the Bid Procedures Order and sections 363(b) and 363(k) of the Bankruptcy Code and is not subject to avoidance, equitable subordination, defense, offset, counterclaim, or recharacterization by any party in interest.  The Credit Bid is binding on the Debtors, the Debtors' estates, any trustee or estate representative, all creditors and parties-in-interest, and any of their respective predecessors, successors or assigns. The Credit Bid is based on legal, valid, enforceable, perfected, senior and non-avoidable liens against substantially all of the Debtors' assets.  Subject to the terms of the Asset Purchase Agreement, certain of the consideration for the Purchased Assets will be an offset of a portion of the Preference Notes in the amount of $30,000,000, which amount is referred to as the Credit Bid Amount in the Asset Purchase Agreement.  The Closing shall not affect the remaining balance of

the Preference Notes not subject to the credit bid (the "**Remaining Preference Notes Balance**"),
and the Remaining Preference Notes Balance owed to the Buyer under the Preference Notes shall
be unaffected and shall continue to be outstanding and due and owing, subject to the terms of the
Asset Purchase Agreement.

## Highest and Best Offer

O.     The Debtors conducted an auction process in accordance with, and have otherwise
complied in all respects with, the Bid Procedures Order.  The auction process set forth in the Bid
Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to
make a higher or otherwise better offer to purchase the Assets.  The Sale Hearing was duly
noticed and conducted in a fair, good faith manner and a reasonable opportunity has been given
to all interested parties to make a higher and better offer for the Assets and no evidence was
presented as to any collusion among bidders or potential bidders.

P.     The offer contained in the Asset Purchase Agreement for the purchase of the
Assets constitutes the highest and best offer for the Assets.  The Debtors' determination that the
Asset Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid
and sound exercise of the Debtors' business judgment.

## No Fraudulent Transfer

Q.     The consideration provided by the Buyer pursuant to the Asset Purchase
Agreement for the Assets acquired from the Debtors (a) is fair and reasonable, (b) is the highest
or best offer for the Assets, and (c) constitutes fair consideration and reasonably equivalent value
(as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Voidable
Transfer Act (as applicable), Uniform Fraudulent Conveyance Act and section 548 of the
Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state,
territory, possession or the District of Columbia.

R.      The Debtors have subjected the Assets to the market pursuant to the Bid Procedures Order and the process has not produced an offer of greater economic value to the Debtors estates than the Buyer's offer, as set forth in the Asset Purchase Agreement.

S.      Approval of the Sale Motion and the Asset Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors and other parties in interest.

T.      The Buyer is not a continuation of the Debtors or of their estates, and there is no continuity of enterprise between the Buyer and the Debtors.  The Buyer is not holding itself out to the public as a continuation of the Debtors.  The Buyer is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors.

## Validity of Transfer

U.      Each Debtor (a) has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement and (c) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transactions contemplated thereby.  The Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action.  No Consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to consummate the Sale and the Asset Purchase Agreement and the transactions contemplated thereby.

V.      No evidence was presented to establish that (a) the Asset Purchase Agreement was entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the

District of Columbia, and (b) either the Debtors or the Buyer are entering into the transactions contemplated by the Asset Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

      W.    The Debtors are the sole and lawful owners of the Assets.  Subject to section 363(f) of the Bankruptcy Code, the transfer of the Assets to the Buyer will be, as of the closing of the transactions contemplated by the Asset Purchase Agreement (the "**Closing**"), a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtors to the Assets free and clear of all liens of any kind (statutory, otherwise, or whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability) (collectively, "**Liens**"), encumbrances, claims (as defined in section 101(5) of the Bankruptcy Code), interests, rights, demands, charges, mortgages, deeds of trust, options, pledges, security interests or similar interests, title defects, hypothecations, security agreements, rights of recovery, rights of first refusal, preemptive rights, judgments, decrees, consent decrees, taxes, conditional sale or other title retention agreements, product liability or any claims based on any theory that Buyer is a successor, transferee or continuation of each Debtor or such Debtor's business, and other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever (collectively, "**Claims**"), including, but not limited to, any applicable Uniform

Commercial Code filings and liens pursuant to state statutory lien laws or any other applicable local laws, relating to, accruing or arising any time prior to the Closing Date, with the exception of Buyer's Assumed Liabilities under the Asset Purchase Agreement.

### Section 363(f) is Satisfied

X.      The Debtors may sell the Assets free and clear of all Liens and Claims against the Debtors, their estates or any of the Assets (other than the Buyer's Assumed Liabilities under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtors, their estates or any of the Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Y.      Unless otherwise expressly included as the Buyer's Assumed Liabilities, the Buyer shall not be responsible for any Liens or Claims, including in respect of the following: (a) any labor or employment agreements; (b) all mortgages, deeds of trust and security interests; (c) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (d) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (e) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of

1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws or any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (f) Claims or Liens arising under any environmental laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date; (g) any other liabilities of the Debtors other than the Buyer's Assumed Liabilities (collectively, the "**Excluded Liabilities**"); (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended and state tax statutes or ordinances providing for the payment of sales taxes; and/or (j) any theories of successor liability.

### Compelling Circumstances for an Immediate Sale

Z.      Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.   The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.  The Asset Purchase Agreement does not impermissibly restructure the rights of the Debtors' creditors and does not impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore does not constitute a *sub rosa* plan.

AA.     To maximize the value of the Assets and preserve the viability of the business to which the Assets relate, it is essential that the Sale of the Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

BB.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.     The relief requested in the Sale Motion is granted and approved as set forth in this Sale Order, and the Sale contemplated thereby is approved.

2.     Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice for the reasons articulated by the Court at the Sale Hearing.

**Approval of the Asset Purchase Agreement**

3.     The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, including the releases contained in Section 7.08 of the Asset Purchase Agreement, are hereby approved.  The Buyer shall file final versions of the Asset Purchase Agreement and all other ancillary documents (excluding related disclosure schedules) with the Court upon closing the Sale. Disclosure schedules that do not contain Confidential Information shall be provided to other parties only upon a reasonable written request to the Debtors.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, (c) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale.

5.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of Liens, Claims or other interests in, against or on all or any portion of the Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, the Assets and any trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.  This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer and the respective successors and assigns of each of the foregoing.  The Asset Purchase Agreement shall also inure to the benefit of the Government Employees' Retirement System of the Virgin Islands and its successors and assigns.

6.      The Asset Purchase Agreement and any ancillary documentation may be modified, amended or supplemented by the parties thereto, in a writing signed by the parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

**Transfer of the Assets**

7.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets to the Buyer on the Closing Date, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest the Buyer with title to the Assets, upon the Debtors' receipt of the Purchase Price and with the exception of the Buyer's Assumed Liabilities, free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities.  Upon the Closing, the Buyer shall take title to and possession of the Assets subject only to the Buyer's Assumed Liabilities.

8.      Except with respect to the Buyer's Assumed Liabilities, all persons that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Buyer at the Closing.  On the Closing Date, or as soon as possible thereafter, each of the Debtors' creditors is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the Debtors' creditors, to execute such documents and take all other actions as may be reasonably necessary to release such creditor's Liens, Claims or other interests in the Assets, if any, as such Liens, Claims or interests may have been recorded or may otherwise exist.

9.      The Debtors are authorized to take any and all actions necessary to consummate the Asset Purchase Agreement, including any actions that otherwise would require further approval by members, managers, shareholders or a board of directors without the need of obtaining such approvals.

10.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the

Debtors' interests in the Assets.  Each and every federal, state, and local governmental agency and department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

11.    A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens, Claims, and other encumbrances of record, except the Buyer's Assumed Liabilities.

12.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Assets (other than statements or documents with respect to Buyer's Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens or interests which the person has or may assert with respect to all or any portion of the Assets, the Debtors are authorized and directed, and the Buyer is authorized, on behalf of the Debtors and each of the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Assets.

13.    This Sale Order is and shall be effective as a determination that on the Closing Date, all Liens, Claims or other interest of any kind or nature whatsoever existing as to the Assets prior to the Closing Date, other than the Buyer's Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; provided, however, that notwithstanding anything to the contrary in this Sale Order, all Liens, Claims or other interests of any kind or nature whatsoever existing as to the assets of the Debtors other than the Assets shall have the same validity, force, priority and effect

that such Liens, Claims or interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

14.    This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  As of the Closing Date, each insurer in connection with the policies transferred pursuant to the Asset Purchase Agreement (the "**Policies**") shall record and conform its books and records of the Policies to establish the Buyer as the sole owner and beneficiary of the Policies.

15.    As of the Closing Date, the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney with full power of substitution in the Debtors' name and stead on behalf of and for the benefit of the Buyer, its successors and assigns, for the following sole and limited purposes: have the power to demand and receive from any Third Party any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute against Third Parties for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity

or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets.

16.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Debtors' Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement.

17.     As of the Closing Date, the Buyer shall be authorized, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

## Prohibition of Actions Against the Buyer

18.     Except for the Buyer's Assumed Liabilities, the Buyer shall not have any liability or other obligation of the Debtors.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Buyer shall not be liable for any Claims against the Debtors or any of its predecessors or Affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or un-asserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtors and any non-Debtor subsidiary, liabilities relating to or arising from any

environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

19.     Except with respect to the Buyer's Assumed Liabilities, all persons, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or un- matured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, any of its Affiliates, its successors or assigns, its Assets or the Assets, such person's Liens, Claims or interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its Affiliates, its successors, assets or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against the Buyer, any of its Affiliates, its successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Buyer, any of its Affiliates or successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking,

terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

20.      All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

21.      Except to the extent expressly included in the Buyer's Assumed Liabilities, or by applicable law or statute, the Buyer and its Affiliates shall have no liability, obligation or responsibility under the WARN Act (29 U.S.C. §§ 210 *et seq*.), the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or environmental law by virtue of the Buyer's purchase of the Assets or assumption of the Assumed Liabilities.

## Other Provisions

22.      The Buyer shall assume the Buyer's Assumed Liabilities set forth in the Asset Purchase Agreement.

23.      The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24.      The purchase of the Assets may not be avoided under section 363(n) of the Bankruptcy Code, as the Purchase Price and consideration for the Assets was not a result of collusion nor controlled by an agreement among potential bidders at such sale.

25.     The Trustee, diligently and in good faith, discharged its duties and obligations pursuant to the Trust Indenture, and otherwise conducted itself with respect to all matters in any way related to the Trust Indenture with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

26.     At the Closing, each of (i) The Settlement Group, Inc. and (ii) BPCP Life Settlement LLC (collectively, the "**Break-Up Fee Bidders**") shall be paid a break-up fee and expense reimbursement in the total amount of $300,000 per Break-Up Fee Bidder.

27.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof without further order of the Court; provided, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

28.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

29.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

30.     The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order, including the releases contained in Section 7.08 of the Asset Purchase Agreement, shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its

entirety; *provided, however*, that this Sale Order shall govern if there is any inconsistency between the Asset Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

31.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto and any waivers and Consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Buyer; (b) interpret, implement and enforce the provisions of this Sale Order; and (c) protect Buyer against any Liens, Claims or other interest in or against the Sellers or the Assets of any kind or nature whatsoever.

32.     Nothing in this Sale Order or the Asset Purchase Agreement (a) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order or (b) authorizes the transfer or assignment to Buyer of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Buyer's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

33.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective immediately upon its entry.

35.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Sale Order shall govern.

**Dated: May 3rd, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**